IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE OROZCO DIAZ,<br><br>    Petitioner,<br><br>  vs.<br><br>ANTHONY KANE, Warden,<br><br>    Respondent.<br>                               / | No. C 04-4070 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS** |

    This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

    A jury found defendant guilty of two counts of first-degree murder. S*ee* Cal. Penal Code § 187 (a). It also found true allegations that defendant discharged a firearm causing death and used a firearm during each murder, *see id.* at §§ 12022.53(d), 12022.5(a), and a special circumstance allegation based upon multiple murders, *see id.* at § 190.2 (a)(3). With regard to each murder conviction, defendant was sentenced to state prison for life without the possibility of parole plus a twenty-five years to life enhancement (Ex. 9 (opinion of court of appeal) at 1-2). The facts relevant to each claim will be set out as needed in the discussion below.

///

# DISCUSSION

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

2

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

Petitioner asserts that: (1) his trial counsel was ineffective in failing to investigate petitioner's cultural background and introduce evidence of it, and in failing to inform the jury that charges were not filed as a result of the "1995 incident;" and (2) his appellate counsel was ineffective in failing to file a timely petition for review with the California Supreme Court.

**1.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

In order to prevail on a Sixth Amendment ineffective counsel claim, petitioner must show: first, that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and second, that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 693–94. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Ibid.*

Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. A difference of opinion as to trial tactics does not constitute denial of effective assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not ineffective assistance simply because in retrospect better tactics are

3

1  known to have been available, *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

2  Petitioner murdered his wife and her lover when he found them in bed together (Ex. 9
3  (opinion of Court of Appeal) at 1). Petitioner and his wife were getting a divorce; petitioner's
4  wife had packed her belongings to leave the family apartment, but apparently had not done so at
5  the time of her murder (*Id.* at 3).

6  Petitioner's defense was that the killings were voluntary manslaughter rather than first-
7  degree murder. Here he contends that his culture, that of rural Mexico, is one of "machismo"
8  in which honor requires that a deceived husband kill an unfaithful wife and her lover, and that
9  counsel was ineffective in failing to investigate this cultural background and introduce evidence
10 of it.

11 The California Court of Appeal described the events on the night of the murders this
12 way:

> On May 28, Carmen [a friend of Jennifer, petitioner's wife and victim] spoke with defendant by telephone. He wanted to go out but had no money, so she offered to lend him $10. When Carmen and her cousin Paulina dropped off the money that evening, Carmen told Jennifer they were going to a club in Monterey. Jennifer, who was with her friend Alma from work, said defendant also was going out. Carmen, but not Jennifer, was aware defendant was going to the same club because he had asked about her destination. . . .
>
> When Carmen and Paulina arrived at the club at 9:00 p.m., they met Carmen's cousins Tony and Janet. Defendant arrived later, and he and Tony played pool. Eventually, all five walked to the parking lot where Paulina discussed her divorce with defendant, and he discussed his "situation" with Jennifer, noting that it was "hard for him" to get a divorce. Defendant drove off alone and Paulina began to take Carmen home, but Carmen decided to ask defendant for a ride to save Paulina from going out of her way.
>
> Paulina caught defendant's attention, both cars pulled over, and defendant agreed to drive Carmen home. . . . During the drive to Carmen's home on Alamo Way, defendant asked whether Jennifer was with someone else. When Carmen did not respond, defendant suggested that in a few years she would "end up telling him and laugh about it." Outside Carmen's house, defendant continued to ask about the men Jennifer had slept with "in her life," but Carmen said nothing. Defendant then named several men Jennifer had been with before they married and said he knew Jennifer was with someone. Carmen said she did not know.
>
> Carmen did not go inside her house, and defendant eventually drove her towards Cross Street, where both Jose and defendant's mother lived. He said he saw the car of Jennifer's co-worker Alma and angrily asked if Carmen knew who Jennifer was with and whether he lived on Cross. Carmen started crying. She did not know where Jennifer was but did know Jennifer was seeing Jose. As defendant then drove from Cross back to Carmen's home, he looked "normal,"

4

and Carmen reminded him that he was to give her a ride to work the next morning.

While at Carmen's home, defendant said he wanted to check whether Jennifer was home so he could confront her. He therefore drove Carmen to C Street. When they arrived at defendant's house, Carmen said she wanted to go home. Defendant handed her his car keys, but she could not drive his car because it had a stick shift.

Defendant walked inside, looking for Jennifer, while Carmen stood at the door and said, "she's not here." Defendant said nothing. He angrily pulled the telephone off the wall. He grabbed Carmen's arms, shook her, and yelled, "You know where she's at. She's over there with him, right?" Carmen replied that she did not know. Defendant then walked to a cupboard and removed something from a file box that was wrapped in a towel. He then went into the bedroom with a black clip in his hand. When Carmen saw bullets and a .40 caliber gun in defendant's hand, she knocked on the door of defendant's brother Albert and yelled for him. Albert then spoke with defendant, telling him to "be a man and use your fist." Defendant said something in reply and left the house.

Carmen followed defendant to his car to get her purse. When defendant told Carmen to get in the car, she complied. She patted his pants in an unsuccessful attempt to find his gun. Defendant swore at Carmen, telling her to leave him alone, that he did not want to hurt her, and that if he was pulled over he would have to shoot the police. He was very angry as he drove to Jose's house on Cross.

Defendant left the car and told Carmen to wait for him. Instead, she followed him to Jose's studio. When defendant said he was going to ask "him" a question, Carmen said he could ask tomorrow. Defendant replied, "No, I'll do it right now." A woman's voice could be heard from inside. Defendant forced open the door. When the light went on, Carmen could see that defendant was holding a gun and that Jennifer and Jose were in bed together.

Defendant said nothing. He pulled a blanket off Jennifer and shot her in the abdomen. Jose pushed Jennifer to the floor and stood on the bed. Carmen pulled on defendant's shirt, but he pushed her away. Jose and defendant struggled until defendant shot Jose, who fell. Defendant then shot Jose a second time. In the meantime, Jennifer had made her way to the door. Defendant extended his right hand and fired a shot at her from behind. She fell to the ground. Next, defendant moved "very close" to Jose and shot him in the head. Defendant then walked to where Jennifer lay on the ground and kicked her in the stomach. Carmen picked up the telephone and called 911 from the bathroom. As she called, she heard more gunshots.

(Ex. 9 at 3-6.)

The Court will assume for purposes of this decision that counsel's failure to introduce evidence of petitioner's supposedly highly-traditional macho cultural background was deficient performance. Petitioner's right to effective assistance of counsel was not violated, however, because on these facts there was not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466

5

U.S. at 693–94 (standard).

Under California law, the "heat of passion" element of voluntary manslaughter has both a subjective and an objective component. *People v. Steele*, 27 Cal. 4th 1230, 1252 (2002). The defendant must show not only that he or she subjectively killed in the heat of passion, but must also show that the heat of passion would have been "'naturally aroused in the mind of an ordinary reasonable person under the given facts and circumstances.'" *Ibid.* (quoting *People v. Logan*, 175 Cal. 45, 49 (1917)). The "cultural background' argument goes to the subjective element, but would have no relevance to the objective element.

First, although petitioner's father was from central Mexico and very traditional, petitioner was born in the United States, went to school here, married here, and worked here. These considerations would so weaken the prospective testimony regarding the macho Mexican rural culture that there was not a reasonable probability that introduction of that evidence would have affected the jury's consideration of the subjective element.

Secondly, under the facts as quoted above, it is clear that petitioner had considerable time to think over what he wanted to do, and a number of opportunities of avoid trouble; this was not a situation where petitioner accidently came upon the scene of his wife's infidelity; petitioner went looking for it. The jury thus would not have found that a reasonable person under the given facts and circumstances would have acted from the heat of passion. That is, the result on the objective prong of the "heat of passion" test, the one which is unaffected by failure to introduce the cultural evidence, is such that it cannot be said that there is a "reasonable probability" that the outcome would have been different had the cultural evidence been introduced.

For these reasons, the Court concludes that counsel was not ineffective in failing to introduce evidence of the cultural norms of rural Mexico.

Petitioner also contends that counsel was ineffective in failing to inform the jury that charges were not filed as a result of the "1995 incident." The California Court of Appeal described that incident:

> The prosecution sought to introduce evidence concerning the 1995

6

1  domestic violence incident under sections 1109 and 1101, subdivision (b). It also
2  sought to introduce Jennifer's hearsay statements from that incident under
   section 1370. In support of its request, the prosecution attached Salinas Police
3  Department report # 95-110306 to its brief and described the facts underlying the
   prior domestic violence as follows: "On November 4, 1995, the defendant and
4  [Jennifer] were dating but living separately. The defendant climbed up a tree
   outside [Jennifer's] apartment located on the second floor and saw what he
5  thought to be [Jennifer] and another man in the bedroom. The defendant went to
   the apartment, shoved past [Jennifer's] roommate, Gail Hunt who answered the
6  door. [Jennifer] blocked his entrance into the bedroom. The defendant stated
   that he saw [Jennifer] with another man and 'was going to kill him.' [Jennifer]
7  went to the kitchen to call 911 and the defendant followed. He picked up a steak
   knife, walked back down the hallway, pushed [Jennifer] up against the wall and
8  stated he was going to kill the man and if he had to would kill [Jennifer] also.
   [Gale] screamed at the defendant to leave. Upon leaving the apartment, the
9  defendant punched a hole in the wall. The Salinas Police Department were [sic]
   called and subsequently interviewed the defendant five days later upon his arrest.
10 After waiving his Miranda rights, the defendant indicated that he was at the
   apartment and saw a man in [Jennifer's] apartment, got jealous and argued with
11 [Jennifer]. He admitted to pushing [Jennifer] and punching the hole in the wall
   but denied use of a knife or making any threats." The prosecution added that,
12 when Gale was interviewed about the 1995 incident on January 25, 2000, she
   stated that a "very drunk" male friend (Larry) was in their apartment trying to
13 rest, that the defendant had "pushed his way" past Gale, threatening to kill Larry,
   Jennifer, and himself, and that the defendant had "brandished a knife at
   [Jennifer] and threatened to stab her and punched a hole in the wall as well."
14 (Ex. 9 at 15-16.)

15  That no charges were filed as a result of this incident was such a minor point that there

16 is no reasonable probability that but for counsel's failure to introduce evidence that no charges

17 were filed the outcome would have been different. Petitioner's Sixth Amendment rights were

18 not violated by counsel's failure to introduce such evidence.

19  Because counsel was not ineffective in either of the ways specified by petitioner, the

20 rejection of this claim by the state appellate courts was not contrary to, nor an unreasonable

21 application of, clearly-established United States Supreme Court authority.

22  **2. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

23  Petitioner contends that his appellate counsel was ineffective in not file a timely petition

24 for review with the California Supreme Court. Counsel filed a petition six days late and asked

25 for relief from the default, which was denied.

26  Petitioner's claim is without merit because there is no right to counsel when pursuing

27 state discretionary review, such as review in the California Supreme Court. *See Wainwright v.*

28 *Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel when pursuing discretionary state

7

1 appeal). Where no constitutional right to counsel exists, there can be no claim for ineffective
2 assistance. *Coleman v. Thompson*, 501 U.S. 722, 757 (1991); *Torna*, 455 U.S. at 587-88 (no
3 ineffective assistance of counsel claim for retained counsel's failure to file timely application for
4 discretionary state appeal when no right to counsel at such proceeding).

5 Because petitioner had no right to effective assistance of counsel for filing his petition
6 for review, his Sixth Amendment rights were not violated by counsel's failure to file on time.
7 The rejection of this claim by the state appellate courts therefore was not contrary to, nor an
8 unreasonable application of, clearly-established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 13, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.04\DIAZ070.RUL.wpd

8